[No. 15041. Department One. December 16, 1918.]

TACOMA SAVINGS BANK & TRUST COMPANY, *Plaintiff,* v. HUGH HERREN, *Appellant,* R. E. WILLIAMS, *Respondent.*[1]

SALES (29)—CONSTRUCTION OF CONTRACT—SUBJECT-MATTER—"SUR-PLUS" HOPS. A contract to purchase 40,000 lbs. of hops, more or less, being all the "surplus hops grown on" specified yards, after delivery of 22,000 lbs. previously contracted to the buyer and 20,000 lbs. contracted to a third person, does not include any of the hops contracted to such third person; and the seller cannot repurchase from such third person and offer the same, on failure of the crop to produce the 40,000 lbs., more or less, in contemplation at the time of the sale.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered July 9, 1918, upon findings in favor of defendant Williams, in an action of interpleader, tried to the court. Affirmed.

*Hayden, Langhorne & Metzger,* for appellant.

*Bates & Peterson,* for respondent.

TOLMAN, J.—The appellant, a hop grower and dealer doing business in the Puyallup valley, on July 28, 1917, entered into a contract with one H. L. Hart by the terms of which he agreed to sell to Hart 22,000 pounds of hops then growing on the Query ranch, of which he was the lessee, at the price of twelve and one-half cents per pound. The last clause of the contract gave to appellant the right to deliver any part of the hops specified "from any prime western Washington hops." Shortly after this contract was executed, it was assigned by Hart to the respondent Williams, a hop broker of Portland, Oregon, who succeeded to all of Hart's rights thereunder. Previous to the making of this contract, appellant had contracted with one

[1]Reported in 176 Pac. 543.

Charles M. Metzler for the sale of 20,000 pounds of hops also to be grown upon the Query ranch, making a total of 42,000 pounds which the appellant had then contracted to sell from the product of this particular ranch, subject only to his right to deliver any prime western Washington hops on the junior contract. The average production of this ranch in previous years had been greater than this total. At this particular time appellant had a contract with one Laidlaw, by the terms of which Laidlaw was supposed to be obligated to deliver to appellant 8,000 pounds net of 1917 hops. On September 12, 1917, appellant entered into still another contract with the respondent, on the usual printed form, by the terms of which appellant agreed to sell, and respondent agreed to buy, 40,000 pounds of hops, more or less, of the 1917 crop, being grown by the appellant on the Herren ranch owned by him, at thirty-four cents per pound, delivery to be made between October 1 and 31 of that year. The blanks in the printed contract are so filled as to identify the place where the hops are being grown, the number of acres, the year in which grown, the amount, "more or less," the price and the time and place of delivery, and the amount of the advances; and there is added on the back of the form the following typewritten provisions which, as well as the contract proper, is signed by both parties thereto:

"Clause 11. The intent of this contract is that Hugh Herren sells and R. E. Williams buys all the surplus hops which shall be harvested in 1917 on the Herren hop yard, mentioned in the body of this instrument and the Query hop yard, near Alderton (leased to Hugh Herren) and also includes the 8,000 pounds contracted by Herren from H. D. Laidlaw of Alderton, after the delivery of 22,000 pounds previously contracted to H. L. Hart on July 28, 1917, from the Query yard and the yard mentioned in the body of this con-

tract and 20,000 pounds sold to Chas. M. Metzler from the Query yard.''

The 1917 yield of hops appears to have been below normal. At any rate, there was harvested from the Query ranch but 22,500 pounds, and from the Herren ranch but 31,500 pounds, and for some reason not disclosed, the 8,000 pounds covered by the Laidlaw contract were not delivered to appellant, so that he had but 54,000 pounds of hops with which to fill all of his contracts. From the yield of the Query ranch, appellant first delivered 20,000 pounds to fill the Metzler contract, and he then immediately repurchased the whole thereof from Metzler. He then delivered 22,000 pounds to respondent in fulfillment of the Hart contract as assigned, and then tendered to respondent 31,500 pounds, being the full product of the Herren ranch, and demanded payment therefor at thirty-four cents per pound under the contract of September 12. Respondent accepted and paid for 11,500 pounds of the hops so tendered, and refused to accept the remaining 20,000 pounds, contending that, under clause 11, above quoted, he was not obligated so to do. To prevent unnecessary loss, the parties then entered into a stipulation reciting most of the facts herein stated, and providing that respondent should deposit $2,250 with the plaintiff herein to cover the appellant's loss, if it should finally be determined that the respondent should have accepted and paid for the 20,000 pounds of hops tendered at the contract rate of thirty-four cents per pound, and that the sum so deposited should abide the result of an action of interpleader to be brought by the plaintiff against both Herren and Williams. From findings and judgment against him, the appellant appeals.

The question before us is solely that of construing

the contract between the parties. The appellant contends, and it may be admitted, that the Hart contract did not bind the appellant to deliver any hops thereunder which had been grown on the Herren ranch, and that the recital to that effect contained in clause 11 of the contract of September 12 was erroneous. Yet, under his option to furnish any prime western Washington hops, he had the privilege of filling the Hart contract in whole or in part from the product of the Herren ranch, and when he signed the clause referred to, he apparently knew that the Query ranch would not produce the 42,000 pounds which he had then contracted therefrom, and elected to reserve the right to make up the shortage from the product of the Herren ranch. However that may be, we find no ambiguity in clause 11, for, in any event, by that clause—notwithstanding the appellant's right to fill the Hart contract from any prime western Washington hops without reference to the specific place where grown—respondent contracted to take only the product of the two ranches, less the 42,000 pounds covered by the previous contracts, plus the Laidlaw hops which were never delivered; and appellant cannot, by rebuying from Metzler, any more than by refusing delivery under the Metzler contract, change the terms of the last contract and make it include that which was specifically excluded.

The judgment of the trial court was right and must be affirmed.

MAIN, C. J., MITCHELL, MACKINTOSH, and CHADWICK, JJ., concur.